IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
August 4, 2015 Session


**STATE OF TENNESSEE v. DUNG TRAN**


**Appeal from the Criminal Court for Shelby County**
**No. 1203880     Chris Craft, Judge**

_____


**No. W2014-02518-CCA-R3-CD  -  Filed September 9, 2015**

_____


Appellant, Dung Tran, was convicted of theft of property valued at $1,000 or more but less than $10,000, a Class D felony; vandalism valued at $1,000 or more but less than $10,000, a Class D felony; burglary, a Class D felony; and unlawful possession of burglary tools, a Class A misdemeanor.  The trial court sentenced appellant to eight years as a Range II, multiple offender for each conviction of theft, vandalism, and burglary and to eleven months, twenty-nine days for the possession of burglary tools conviction.  The sentences were aligned concurrently for an effective sentence of eight years.  On appeal, appellant argues that the evidence was insufficient to support his theft and vandalism convictions.  Following our thorough review of the record, the parties' arguments, and the applicable law, we affirm the judgments of the trial court.

 **Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROGER A. PAGE, delivered the opinion of the Court, in which ALAN E. GLENN and ROBERT H. MONTGOMERY, JR., JJ., joined.

Micah J. Gates (on appeal) and John L. Dolan (at trial), Memphis, Tennessee, for the Appellant, Dung Tran.

Herbert H. Slatery III, Attorney General and Reporter; Rachel E. Willis, Senior Counsel; Caitlin Smith, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Marianne Lea Bell, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

This case concerns the theft of items from a vacant section of Raleigh Springs Mall in Memphis, Tennessee, and the damage done to the mall during the perpetration of the theft. After discovery of the theft and damage, appellant was indicted for theft of property valued at $10,000 or more but less than $60,000; vandalism valued at $10,000 or more but less than $60,000; burglary; and unlawful possession of burglary tools. Appellant was subsequently convicted of theft of property valued at $1,000 or more but less than $10,000; vandalism valued at $1,000 or more but less than $10,000; burglary; and unlawful possession of burglary tools.

I. Facts from Trial

Memphis Police Department Officer Derrick Gary testified that on April 5, 2012, he and his partner, Lorenzo Gianarolli, went to Raleigh Springs Mall in Shelby County, Tennessee, to view security camera recordings as part of an automobile theft investigation.[1] While the mall's manager was locating the video recordings relevant to the automobile thefts, Officer Gary was watching the live feed security footage and saw a man dressed in black climb into a trash compactor chute and go through the wall of a vacant area of the mall. After being told by the mall's manager and maintenance supervisor that the man did not have authorization to be in that area of the mall, Officer Gary and his partner drove to the area in which the man had entered the mall. When they arrived, Officer Gary heard "a loud banging sound," which he described as the sound of someone striking metal, coming from one of the mall's exit stairwells. The officers positioned themselves at the exterior entrance of that stairwell and heard someone dragging a metal item down the stairs. The perpetrator dragged the item to the bottom of the stairwell to the doors at which the officers waited on the opposite side, and the perpetrator stopped and went back up the stairs into the mall. The officers radioed for backup to aid in the building search for the suspect.

After the additional officers arrived, Officer Gary entered the mall through the stairwell in which they had heard the perpetrator. When the officers opened the door, Officer Gary saw several large aluminum HVAC parts sitting at the bottom of the stairwell. The parts had some type of oil or liquid draining from them, and there was a trail of the liquid going up the stairs. The officers also observed drag marks on the floor. The officers followed the trail up to a large engineering room full of industrial air conditioners. The officers then followed the sound of metal hitting metal and saw

---

[1] Because appellant only challenges the sufficiency of the evidence regarding the amount of the theft and vandalism attributable to appellant, our summary of the facts will be limited to evidence in that regard and evidence that illuminates the circumstances of appellant's arrest.

appellant hitting and pulling one of the large radiators. The officers arrested appellant and found no one else inside the restricted area.

Officer Gary explained that there was a "tremendous amount of damage" to the heating and cooling unit, the electrical system, the plumbing system, and the sprinkler system. Officer Gary stated that all of the scrap metal in those systems had been removed. He explained that there were some air conditioning units that had not been damaged. In the area where appellant had been apprehended, officers found numerous tools, including bolt cutters, hammers, screwdrivers, pry bars, LED flashlights, and Sunbeam batteries. Appellant also had a cellular telephone on his person at the time of his arrest. The telephone had only one contact saved in its internal memory. The contact was for Mr. Darrell Norry, who was later arrested after officers observed him circling the vacant mall parking lot. During cross-examination, Officer Gary conceded that he only saw appellant damage one item in the mall and that he did not observe how the other property was damaged.

Memphis Police Department Officer Jeremy Montgomery testified that he went to Raleigh Springs Mall on April 5, 2012, after other officers called for backup. His testimony regarding appellant's arrest was substantially similar to Officer Gary's testimony.

Memphis Police Department Officer Charles Cathey testified that at the time of this crime, he worked as a crime scene investigation officer. Officer Cathey testified as to the items found at the crime scene that were described by Officer Gary above.

Darrell Norry testified that he met appellant through a mutual friend and that both he and appellant were mechanics. Mr. Norry explained that in 2012, appellant told him that appellant had permission to go inside of Raleigh Springs Mall to get scrap metal and copper as payment for a debt owed to appellant from a man unknown to Mr. Norry. Thereafter, Mr. Norry took appellant to the mall and gave appellant tools and a flashlight to aid appellant in the removal of the scrap metal. Appellant resided at the mall periodically for approximately one month. Mr. Norry explained that during that month, he took appellant food and gave appellant a cellular telephone so that he could contact appellant easily. Also during that month, Mr. Norry went to the mall four to five times and loaded metal into his Suburban. Mr. Norry explained that he would pull up to a door at the mall and that appellant would load air conditioning units into the vehicle. Mr. Norry stated that approximately five air conditioning units were loaded into his vehicle and that other smaller items containing copper were taken as well. After the items were loaded into his vehicle, Mr. Norry and appellant took the items to Arkansas to be sold as scrap metal. Mr. Norry estimated that they made a total of $700 on the metal sold from the mall. Mr. Norry and appellant split the proceeds equally. Mr. Norry explained that he went to the mall on the day of appellant's arrest because appellant had told Mr. Norry

that a load of metal would be ready for delivery that day and because appellant was not answering Mr. Norry's telephone calls. Mr. Norry explained that he "loafed" outside the mall when he saw the police crime scene van near where appellant was staying and that he thought that appellant had been hurt. Mr. Norry was arrested for his involvement in the scheme and subsequently pleaded guilty to solicitation to commit theft of property over $10,000. As part of his guilty plea, Mr. Norry agreed to pay restitution in the amount of $5,000.

During cross-examination, Mr. Norry agreed that appellant's stripping metal from a mall in payment of a debt owed to him was illogical but asserted that appellant sought out Mr. Norry's help in hauling the scrap metal to Arkansas.

Memphis Police Department Major Paul Wright, Jr., testified that on April 5, 2012, he went to Raleigh Springs Mall after an officer had arrested appellant. After his arrival, Major Wright reviewed the arrest paperwork and the surveillance video of appellant's entry into the mall. During his review, Major Wright noticed Mr. Norry driving near the crime scene, and due to information discovered during the investigation, Major Wright conducted a traffic stop. Major Wright found numerous tools, gloves, and flashlights inside of Mr. Norry's vehicle. Mr. Norry told Major Wright that he was helping appellant transport metal from inside the mall to a "scrap yard" in Arkansas. Mr. Norry also told Major Wright that he was taking food to appellant. During cross-examination, Major Wright stated that some of the damage would have taken two people due to the size of the items; however, during re-direct examination, Major Wright agreed that he did not pick up the items or know if the items were heavy.

Juanita Jones, the former general manager at Raleigh Springs Mall, testified consistently with Officer Gary's version of events. Ms. Jones elaborated that she did not give appellant permission to be inside the vacant area of the mall. Ms. Jones explained that after appellant's arrest, she went inside the area in which appellant was discovered. Ms. Jones observed a dirty mattress, food and drink containers, "busted up bathrooms where the copper had been pulled out," "busted out electrical panels," damage to the air conditioning system, and damage to the interior of the building from removing the air conditioning units. Ms. Jones stated that she had done a walkthrough of the area approximately one month prior to appellant's arrest and that at that time, there was no damage to the area. After assessing the damage, two separate electrical companies provided estimates of $100,000 and $140,000 to repair the damage to the electrical systems, which did not include the damage to the structure of the building. Ms. Jones stated that it would cost between $15,000 and $25,000 to replace each air conditioning unit and that four or five of the units had been damaged. Ms. Jones explained that due to the extensive costs, the owner of the property decided not to repair the building but to sell the property.

During cross-examination, Ms. Jones stated that she did not see appellant damage the property. Ms. Jones also agreed that there had been other instances of perpetrators removing metal and electronic items from the mall while she was general manager from August 2011 to May 2013. Ms. Jones stated that there were more than two instances of this type of damage, but she could not remember the exact number of occurrences. She agreed that she could not definitively state that appellant had done all the damage at issue. Following this testimony, the State rested its case-in-chief, and the defense did not present further evidence.

Upon this evidence, the jury found appellant guilty of theft of property valued at $1,000 or more but less than $10,000; vandalism valued at $1,000 or more but less than $10,000; burglary; and unlawful possession of burglary tools.

## II. Analysis

Appellant argues that there was insufficient proof that appellant stole property valued at $1,000 or more when Mr. Norry's testimony was that the scrap metal sold for $700. Appellant also argues that there was insufficient proof of vandalism valued at $1,000 or more because while the State proved that between $100,000 and $140,000 in damage occurred, the State failed to prove that all the damage was attributable to appellant. The State responds that the evidence was sufficient to support appellant's convictions.

The standard for appellate review of a claim challenging the sufficiency of the State's evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (citing *Johnson v. Louisiana*, 406 U.S. 356, 362 (1972)); *see* Tenn. R. App. P. 13(e); *State v. Davis*, 354 S.W.3d 718, 729 (Tenn. 2011). To obtain relief on a claim of insufficient evidence, appellant must demonstrate that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319. This standard of review is identical whether the conviction is predicated on direct or circumstantial evidence, or a combination of both. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011); *State v. Brown*, 551 S.W.2d 329, 331 (Tenn. 1977).

On appellate review, "'we afford the prosecution the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences which may be drawn therefrom.'" *Davis*, 354 S.W.3d at 729 (quoting *State v. Majors*, 318 S.W.3d 850, 857 (Tenn. 2010)); *State v. Williams*, 657 S.W.2d 405, 410 (Tenn. 1983); *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). In a jury trial, questions involving the credibility of witnesses and the weight and value to be given the evidence, as well as all factual disputes raised by the evidence, are resolved by the jury as trier of fact. *State v. Bland*,

958 S.W.2d 651, 659 (Tenn. 1997); *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990). This court presumes that the jury has afforded the State all reasonable inferences from the evidence and resolved all conflicts in the testimony in favor of the State; as such, we will not substitute our own inferences drawn from the evidence for those drawn by the jury, nor will we re-weigh or re-evaluate the evidence. *Dorantes*, 331 S.W.3d at 379; *Cabbage*, 571 S.W.2d at 835; *see State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984). Because a jury conviction removes the presumption of innocence that appellant enjoyed at trial and replaces it with one of guilt at the appellate level, the burden of proof shifts from the State to the convicted appellant, who must demonstrate to this court that the evidence is insufficient to support the jury's findings. *Davis*, 354 S.W.3d at 729 (citing *State v. Sisk*, 343 S.W.3d 60, 65 (Tenn. 2011)).

A person commits theft of property when "with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." Tenn. Code Ann. § 39-14-103(a).

"A person commits the offense of vandalism who knowingly . . . [c]auses damage to or the destruction of any real or personal property of another . . . knowing that the person does not have the owner's effective consent." *Id.* § 39-14-408(b)(1). "'Damage' includes, but is not limited to[,] . . . [t]ampering with property and causing pecuniary loss or substantial inconvenience to the owner or a third person." *Id.* § 39-14-408(a)(1)(B).

For both of these offenses, the level of offense — misdemeanor or class of felony — is determined by the value of the stolen or damaged goods. *See id.* § 39-14-105; *id.* § 39-14-408(c)(1) (stating that a person who commits the type of vandalism at issue in this case "shall be punished as for theft under § 39-14-105, after determining value under § 39-11-106"). Theft of property or vandalism that is valued at $1,000 or more but less than $10,000 is a Class D felony. *Id.* § 39-14-105(a)(3).

The value of the stolen or damaged property is determined by "[t]he fair market value of the property or service at the time and place of the offense; or . . . [i]f the fair market value of the property cannot be ascertained, the cost of replacing the property within a reasonable time after the offense." *Id.* § 39-11-106(36)(A)(i)-(ii). It is the province of the jury to determine the value of the stolen or damaged property. *State v. Hamm*, 611 S.W.2d 826, 828-29 (Tenn. 1981) ("In determining the value of stolen property in larceny cases, the trier of fact is to determine the fair cash market value of the stolen property at the time and place of the theft . . . .").

Regarding appellant's theft conviction, appellant argues that because he sold the materials to a scrap yard for $700, the fair market value of the stolen property was $700. However, the jury also heard testimony that appellant and Mr. Norry took five truckloads of metal, which included the air conditioning units and smaller copper items, to the scrap

yard.  Mr. Norry stated that approximately five air conditioning units were loaded into his vehicle.  Furthermore, Ms. Jones stated that it would cost between $15,000 and $25,000 to replace each air conditioning unit and that four or five of the units had been damaged. While it is the fair market value of the items stolen that is generally determinative, the jury, as the finder of fact, was within its purview to conclude that (1) appellant had sold the stolen property for less than the fair market value and (2) that the stolen property's value was less than its replacement value.  This court presumes that the jury has afforded the State all reasonable inferences from the evidence and resolved all conflicts in the testimony in favor of the State; as such, we will not substitute our own inferences drawn from the evidence for those drawn by the jury, nor will we re-weigh or re-evaluate the evidence.  *Dorantes*, 331 S.W.3d at 379.  We conclude that after viewing the evidence in the light most favorable to the State, a rational jury could have found that appellant had committed theft of property valued at $1,000 or more but less than $10,000.

Regarding appellant's vandalism conviction, appellant argues that the State failed to prove that all of the damage perpetrated was attributable to appellant and that only $700 was linked definitively to appellant.  However, the $700 is only relevant to the theft of property valuation because that is how much the stolen property was sold for at the scrap yard; it is not relevant in the calculation of damage done to the mall property. *Compare* Tenn. Code Ann. § 39-14-103(a) (theft of property), *with* Tenn. Code Ann. § 39-14-408(b)(1) (vandalism).[2]  Regarding the valuation of the damage done, Ms. Jones testified that after assessing the damage, two separate electrical companies provided estimates of $100,000 and $140,000 to repair the damage to the electrical systems, which did not include the damage to the structure of the building.  Ms. Jones also testified that she had conducted a walkthrough of the damaged area approximately one month prior to appellant's arrest and that there was no damage to the property at that time.  Furthermore, Mr. Norry explained that he took appellant to the mall approximately one month prior to his arrest and that appellant periodically resided inside the mall during that month.  Mr. Norry also testified that during that month, at appellant's behest, he went to the mall four to five times, loaded metal in his Suburban, and drove the metal to Arkansas to be sold. Finally, while Ms. Jones testified that this incident was not the only occurrence in which metal was stolen from the mall during her employment as general manager, she did not testify that the other instances occurred in the same area or near the same time as this

---

[2] We note that the Tennessee Pattern Jury Instructions now include a specific instruction for use in determining value in vandalism cases and that the trial court used that instruction in this case.  The instruction is as follows: "In determining the value of the properly vandalized, the value of the property shall be fixed as to the amount of the damage, the reasonable cost of repairing the damage to the property, or the cost of replacement of the property vandalized." 7 Tenn. Prac. Pattern Jury Instr. T.P.I.–Crim. 11.03(a)(G) (18th ed. 2014); *see State v. John Edward Lewis*, No. M2014-01912-CCA-R3-CD, 2015 WL 3541424, at *3 n.9 (Tenn. Crim. App. June 5, 2015).

incident.  We note that "a criminal offense may be established exclusively by circumstantial evidence." *Dorantes*, 331 S.W.3d at 379 (citations omitted).  With this in mind, we conclude that after viewing the evidence in the light most favorable to the State, a rational jury could have found that appellant had committed vandalism valued at $1,000 or more but less than $10,000.  Therefore, appellant is without relief as to this issue.

## CONCLUSION

Based on the parties' arguments, the record, and the applicable law, we affirm the judgments of the trial court.

_____
ROGER A. PAGE, JUDGE